By the Court, Bronson, J.
Replevin in the cepit will only lie where trespass might have been brought, and the demand and refusal must therefore be laid out of view. The question is not whether there has been a conversion of the property for which the plaintiff might have brought trover, or replevin in the detinet, but whether the defendant is chargeable with a tortious taking.
If goods be taken by trespass from a trespasser, the books are not agreed on the question whether the owner may have an action of trespass against the last taker. It is said, (1 Sid. 438,) that the action will lie ; but many of the old cases hold that the owner cannot have trespass against the last taker, because the first taker acquired a property in the goods by the tort. (Bro. Trespass, pl. 256, 329, 358 ; Vin. Ab., Trepass (R. 3,) Bac. Ab., Trespass (G.) 7th Bond. Ed.) I never thought much of the old notion that a tortious taking changed the property of the goods.(a) If that were so, the trespasser could pass a good title to a third person, and the owner would have no remedy except against the original wrong-doer. There can be no doubt that the owner may follow the goods, and if the last taker was a trespasser upon the first, I see no good reason why he should not answer in tre'spass, as well as in any other form of action. Having got the goods by wrong, he has no ground for complaint if he is treated as a trespasser by the true owner. The case of Acker v. Campbell, (23 Wend. 372,) stands upon this principle, though there may be room for question about the application which was there made of the rule ; because the second taker, against whom the action was brought, was not a trespasser upon the first. He took the goods by legal process against the original wrong-doers, In Cary v. *350 Hotailing, and Olmsted v. Hotailing, (1 Hill, 311 & 317,) the actions were brought against the first taker ; and the cases only prove that a. delivery of the goods, if obtained by fraud, will not prevent the owner from having replevin in the cepit against the wrong-doer.
If there be no fault on the part of the second taker, still if he refuse to deliver the goods to the owner on demand made, trover will lie, or replevin in the detinet; but I see no principle upon which he can be treated as a trespasser. It may, I think, be taken as a general rule that trespass will not lie against one who came to possession of the goods by delivery, and without any fault on his part, although it may turn out that the person who made the delivery had no title and was a wrongdoer. (Marshall v. Davis, 1 Wend. 109 ; Nash v. Mosher, 19 Wend. 431 ; Wilson v. Barker, 4 Barn. & Adolph. 614 ; Viner, Trespass (M.) pl. 11,12.) In Bac. Ab., Trespass (E.) 2, (citing Bro. Ab. Trespass pi. 48,) it is laid down, that if the goods of J. S. are illegally taken in execution by the sheriff, and delivered by him to J. N., trespass will not lie against the latter, because he obtained the possession of the goods lawfully. (And see Van Brunt v. Schenck, 11 John. 384, per Spencer, J.)
In McCarty v. Vickery, (12 John. 348,) the defendant removed a quantity of wood which the plaintiff had sold and delivered to one Fake, and although Fake obtained the delivery by fraud, it was held that trespass would not lie against the defendant. I am aware that this decision was questioned by Cowen J., in Cary v. Hotailing, (1 Hill, 313, 314 ;) and if the case, as he assumes, is to be taken as deciding that the owner could not maintain trespass against the fraudulent vendee, then I agree that the decision cannot be supported. But it will be observed that the action was brought against a third person, who had probably acted under the authority of the vendee) and then the case comes within the principle, that one who without any fault on his part receives the goods from a wrong-doer, cannot be made answerable in trespass. As against him, the *351 remedy of the owner is an action of trover ; and unless he has sold or otherwise converted the goods, that action will not lie without a demand. (Storm v. Livingston, 6 John. R. 44.) In the case cited the plaintiff’s goods were wrongfully taken by a constable on an execution and sold to the defendant, and the court said, “ the defendant came lawfully by the horse, by the purcase at the constable’s sale and there having been no sufficient demand of the horse before suit brought, it was held that trover would not lie. I think this case stands on a firm foundation. A man who innocently purchases property, supposing he should acquire a good title, ought not to be subjected to an action until he has an opportunity to restore the goods to the true owner.
In the case at bar, the sheriff took the property and sold it to Townsend. As Townsend was the plaintiff in the execution, he was probably in no better condition than the sheriff, and ■ might have been treated as a trespasser. But as to the defendant, if he innocently purchased the mare from Townsend, or from any one else into whose hands the property had passed, I think there is no principle upon which he can be treated as a tresnasser. The plaintiff must bring trover, or replevin in the detinet.
But although the defendant said he had bought the mare, he gave no evidence of that fact, nor did he show how he came to the possession of the property. He may, for aught that appears, be a trespasser on a trespasser. I think it was enough for the plaintiff to show the original wrongful taking. That threw the burden upon the defendant of showing that he came to the possession of the property by purchase or bailment, and without any fault on his part. On this ground I think the non-suit was improperly ordered.
Nelson, Ch. J. concurred.
Cowen, J.
This is an action of replevin for taking and detaining the plaintiff’s mare. To sustain the action in that form *352 it was necessary for the plaintiff to show that the defendant wrongfully took her from his actual or constructive possession. That the proof wTas sufficient to establish property in the plaintiff is not denied. To make out the alleged taking, it was farther in evidence that, under a fi. fa. in favor of one Townsend against John Post, the mare was seized by a deputy sheriff and sold at auction to Townsend, who took her away ; and she was afterwards seen in the possession of the defendant. The plaintiff sent Post as her agent to demand' the mare of the defendant, who refused to give her up, claiming to have purchased her honestly. That he came to the possession of the mare by purchase, however, there was no evidence beyond his own allegation. This of course had no tendency nor was it competent evidence to show that he was a purchaser. The plaintiff was nonsuited, and the defendant’s counsel thinks he is entitled to retain the nonsuit on the ground that no such wrongful taking was shown as amounted to a trespass.
There was indeed no direct evidence as to the manner in which the defendant came to the possession ; but I am of opinion that proof of the plaintiff’s ownership, that the deputy took and Townsend purchased illegally, and that the defendant was afterwards seen in possession, was, prima facie, sufficient to satisfy the allegation of a tortious taking on his part. That the property is missing without the owner’s consent and traced to the hands of another soon after, is often received as sufficient proof even of a felonious taking. After the proof here given, it lay with the defendant to show, if such was the fact, that the manner in which he obtained possession afforded ground for turning the plaintiff round to a remedy by trover or replevin in the detinet. A demand had been duly made ; and the objection was technical.
But conceding that on the proof we must say the defendant came to the possession of the mare by a delivery from Town ■ send, and even in ignorance that the plaintiff claimed property, I am by no means prepared to admit that the law would not hold him liable as a trespasser. That he would not be charge-3 *353 able as a joint wrong-doer with Townsend, I agree ; because the trespass not having been committed for his benefit, he could not, on the mere receiving, be considered as agreeing to the original tort. (Wilson v. Barker, 4 Barn. & Adolph. 614, 1 Nev. & Mann. 409, S. C. ; Harper v. Baker, 3 Monroe, 421, S. P.) Even if the defendant had been a purchaser from Townsend, as he asserted, it cannot, I think, be maintained, at least not without showing the most perfect good faith, that he should have been excused from liability in the cepit. As a general rule most certainly, the law does not make the defendant’s knowledge or notice of the plaintiff’s right a criterion by which the form of a mere civil remedy is to be regulated. If a man take the property of another without his consent, or the consent of his bailee, wherever it may be found, such taking is a trespass, unless the property have been lost. If the trespass be involuntary, or by mistake, that may be a good reason for allowing a tender of amends; but the act is none the less a trespass, if it occasion an immediate injury. The intent is im material. (1 Chit. Pl. 129, 130, Am. ed. of 1840.)
We all agree that, though Townsend purchased and received the mare from the sheriff, he as well as the sheriff was a trespasser ; and that neither the seizure nor sale worked any change in the plaintiff’s rights, if the mare originally belonged to her. The doctrine laid down in some of the ancient books, that a tortious taking from the owner changes his property, has long since been exploded. (1 Chit. Pl. 123, Am. ed. of 1840.) His interest then not being affected in the least, there is no difficulty in seeing that his personal right is clear. The rule laid down in the books is as follows: tc The person in whom the general property in a personal chattel is, may maintain an action of trespass for the taking of the chattel by a stranger; for a general property always draws to it a possession in law, which is, in the case of a personal chattel, by reason of the transitoriness of its nature, sufficient to found this action upon.” (Bac. Abr. Tresp. (C) 2.) The rule seems hardly to admit of an exception. In Lotan v. Cross, (2 Camp. 465,) the plain *354 tiff brought trespass for an injury to his horse while it was in the hands of his friend (Brown) upon an actual bailment and delivery by the plaintiff to Brown. Lord Ellenborough said, “ the property is proved to be in the plaintiff, and prima facie the thing is to be considered in his legal possession, whoever may be the occupier. Show a letting for a certain time in Brown, and the possession would be in him.” He held that the action would lie. It will hardly be contended that the taking of a man’s property without his consent will go farther towards divesting the legal possession inherent in the general ownership, than the actual delivery of possession. So far the doctrine is too well established to require a multiplication of authorities. The uniformity with which it has been adhered to by all courts may be seen in 1 Chit. PI. 169, (Am. ed, 1840,) where most of the cases are referred to.
The right then still remaining in the plaintiff, had the de<* fendant taken the goods either from the sheriff or Townsend without their consent respectively, it follows that he would have been a trepasser. This point has been so recently held, and indeed more than held by this court, that I shall do little more than to mention the case. (Acker v. Campbell, 23 Wend. 372.) There the plaintiff had actually delivered the goods to one Hooker, who obtained them by a fraudulent misrepresentation. The defendant as sheriff took them by virtue of a fi.fa. against Hooker. We held that the sheriff was liable as a trespasser. The action was, as here, replevin in the cepit. The chief justice said there was no doubt that the action would have been appropriate as against Hooker, and the sheriff was in no better condition. In short we held that, where the goods of A. are wrongfully taken by B., and C. takes them from B, the first taker, trespass lies by A. against C. On this there is Ho disagreement among the cases ; at least there has been none for many years. The same thing was held so long ago as Wilbraham v. Snow, (1 Sid. 438. See per Gould, J. in Wilkins' case, 1 Leach, 522 ; 1 Hill, 315, cites same case.)
This brings us to the question whether, suppose the first *355 wrongful taker to have delivered the goods to the defendant, he is a trepasser. That he could not be charged with theft I concede, even if he had knowledge ; but this turns on the distinction between principal and accessory. Were it not for that, I am not aware of any principle by which he could, the intent being felonious, escape the imputation of a caption and asportation from the owner. But we are dealing with the civil remedy where all wrong-doers are principals. How is the matter in trespass 1 The extreme in favor of the defendant would be to suppose him a bona fide purchaser; and the question even then is so very doubtful that Chitty, who is properly considered the standard guide upon such questions, in his book on pleading states the result of the authorities, at one page, as in favor of the defendant, and at a subsequent page, against him. (1 Chit. Pl. 80 ; id. 171, Am. ed. of 1840.) Of p. 80, where he alleges the defendant’s exemption, I will merely say now, that, with the exception of Roll. Abr., the books which he cites (note (b)) do not touch the question ; and those which he cites at p. 171, are not by any means decisive against the exemption. (Vide note (m) there.) And were we thrown back upon the modern English cases, and indeed the modem cases every where, taking, as we must, the well settled general doctrine, that intention enters not at all into the act as a criterion between trespass and trover, and resting the question on the elements which are positively laid down by the books in defining a trespass, it would indeed be impossible to escape the conclusion that any interference with a man’s goods in the possession of another, with or without that other’s consent, amounts to a trespass. Property, possession, and non-consent in the plaintiff, and force on the side of the defendant, all conspire in the same degree as in those cases where trespass is held to lie notwithstanding the plainest mistake and the clearest innocence on the side of the defendant. The better opinion seems to be, that any one who originally takes personal property wrongfully, is to be considered a direct trespasser against the owner; and, indeed, an original taker from him at *356 each minute of the time during which he keeps possession. Thus, even in larceny, possession of goods stolen by the thief is a larceny in every county into which he carries them, “ because,” says East, “ the legal possession still remaining in the true owner, every moment’s continuance of the trespass and felony amounts to a new caption and asportation.” (2 East P. C., 771.) I know the trespass cannot be laid with a continuando, (Gillam v. Clayton, 3 Lev. 93,) that possession may not be considered a taking to prevent the statute of limitations from running, (Wilchkin v. Gahan, 1 Irish T. R. 591,596,) and that goods carried into a local jurisdiction, will not be considered as taken there, for the purpose of giving its court cognizance of the wrong ; (Keightley v. Nodes, Sty. 313 ;) but for the purpose of most questions, the rule is the same as in larceny. (See Cary v. Hotailing, 1 Hill, 314, and the cases there cited.) When the question arises as between the general owner and the tortious taker, it is not for the latter to claim any advantage from his own wrong. As between the latter and third persons, the taker is indeed holden to have acquired a special property, so that he can maintain an action of trespass, or, (as we hold,) even trover,for the taking; and if the property be instrumental in trespassing, the remedy lies against him and not against the owner. (M'Manus v. Crickett, 1 East, 106, 107, and books there cited.) But when the latter sues, not even the continuance of his possession can be denied.
A word more as to the bonafides of the taker. In Colwill v. Reeves, (2 Campb. 575,) the plaintiff had actually mixed a parcel of his own furniture with that which the officer had a right to take, so that the latter was completely deceived. Lord Ellenborough held, that general property in the plaintiff and a taking were the only criteria ; and therefore trespass lay. In Farrant v. Thompson, (2 Dowl. & Ryl. 1,) the execution debt- or had taken the plaintiff’s machinery. The sheriff seized it in the hands of the debtor and sold it to the defendant, a bona fide purchaser. Abbott, Ch. J. said, the sheriff being a wrong *357 doer in taking the property, the defendant could not, under him, acquire any title to it. No demand and refusal is mentioned in the report; and the whole court appear to have considered the case as containing all the ingredients of a trespass, though the form of the remedy was trover. In Higginson v. York, (5 Mass. Rep. 341,) P. had cut wood on the plaintiff’s island and sold it to K., who employed the defendant, a coaster, to take and transport it in his vessel. The defendant was held liable for the value of the wood in trespass, for entering on the island and taking it away. But quotations need not be multiplied. Every lawyer knows that most cases where trespass de bonis is the clear and undisputed remedy, arise from mere misapprehension of right. Such especially is that class of cases in which goods are seized on the ground that the ' debtor has sold or mortgaged them to defraud his creditors. Such too are most of the cases where one man enters on the land of another under a claim of right. It is no answer that he purchased and took possession under a third person who had been long in actual possession and occupancy.
I will not, however, deny that an exception in favor of the taker, where he is a bona fide purchaser from the wrongdoer, has found its way into the books; nor that, however discordant it be with established principles, it may, at least in this state, have become too inveterate to be displaced. I concede, moreover, that this exception derives great countenance, if not from any English adjudication, at least from an ancient and imposing dictum, of the English common pleas, which has stood approved by one of the greatest of English judges, and come down to us in his book, not crossed, to use the words of the preface, by any resolution of later times(b) so far as I have been able to discover. It was recognized for the first time, I think, in 37 Eliz., and is thus stated by Rolle in his Abridgment, (Trespass, (y,) pl. 18, 19, Vol. 2, p. 556,) under the head of Trespass and not Case : “ If the sheriff, upon a writ of extent, take a furnace fixed to the land and sell it to J. S., and he take it, no ac *358 tion of trespass lies against J. S.,though it be admitted that the sheriff could not lawfully sell that which was fixed to the land; for J. S. comes to it without any tort done by himself. Hill. 37 Eliz., Day v. Austin and Bisbich" Again : ££ If a stranger take my horse or other goods and sell it to J. S., and J. S. take it accordingly, no action of trespass lies against him. In the same case of Day, per curiam.” The case is reported in Cro. Eliz. 374, where counsel stated the point thus : ££ Trespass lies not against the defendant, because he hath it by the delivery of another, and not by his own taking.” The book says this was not much insisted upon, because the defendant was present and took it, and so he was an immediate trespasser. In Owen, 70, where the same case is reported, the book says, that by the court it was held a good discharge; “ for if a stranger take my horse and sell him, trespass will not lie against the vendee, but a detinue. But if one sell my horse and a stranger take him, he is a trespasser.” In Bac. Abr., Trespass, E., it is said : ££ If the sheriff deliver goods, illegally taken, to J. N., who takes them, J. N. is not a trespasser”—citing Bro., Trespass, pi. 48. Brooke certainly does not lay down the doctrine in ■ so many words, as having been even declared by any judge, much less adjudicated. He cites 44 E., 20, which seems to decide no more than that, the defendant in replevin cannot maintain trespass against the plaintiff for receiving the defendant’s goods from the sheriff under a writ or plaint in replevin. No more is made of the case by Roll, or Comyn. (Roll. Abr. Tresp. (Y.) pi. 5 ; Com. Dig. Tresp. D.) The allusion by Finchden, mentioned in the Year Book and Brooke, to the sheriff taking and delivering goods in execution, probably means the goods of the party against whom damages were recovered; for if the party recovering receive the goods of a third person from the sheriff, though under afi. fa., it was never doubted that both plaintiff and sheriff would be trespassers.
The proposition as repeated in Comyn1 s Digest, has taken its place among the dicta of this court. It was cited and ap *359 proved by Mr. Justice Spencer in Van Brunt v. Schenck, (11 John. Rep. 377.) A subsidiary quotation from 20 Vin. 462, by the same learned judge, is a repetition of various passages from Brooke, importing that a wrongful taker gains a property by the tort; which is not law. (1 Chit. PI. 123, Am. ed. of 1840.) But the proposition, to the extent laid down in Rolle and Comyn, was in effect adjudged to be sound in Storm v. Livingston, (6 John. Rep. 44.) A constable tortiously took the plaintiff’s horse and sold it at auction to the defendant; and this court held that trover would not lie till demand and refusal, because the defendant came lawfully by the horse. The decision necessarily involved a denial that trespass wmuld lie; for a taking which warrants an action of trespass is, per se, a conversion. (Bull. N. P. 44, ed. of 1788 ; Bruen v. Roe, 1 Sid. 264.)
The result is, that no English adjudication creates an exception in favor of one who purchases from the tortious taker of another’s property. But in Day v. Austin, we have the well attested opinion of the common pleas, (for Ovren, the reporter, was one of the judges,) that in such case detinue alone would lie against the purchaser—at any rate, that trespass would not—and the point has been expressly adjudged by this court. I .think the protection must be understood as settled at least in favor of a purchaser for valuable consideration, especially if he take honafide ; whether the original taking were by color of process or not. For if a sheriff take goods wrongfully under pretence of an execution, he is none the less a naked trespasser than if he wrere without process. His act does not even bring the goods into the custody of the law so that they cannot be distrained. (Sherry v. Schuyler, 2 Hill, 204.) Mr. Dane limits his statement of the exception to a purchaser bona fide from the first taker. (5 Dane’s Abr. p. 582, § 17.) Nor is there any thing in the books expressly requiring it to be carried farther. In Spotts v. Lange, (7 Lou, Rep. 182, 187,) the exception seems to have been recognized to that extent.
Under such a restriction, I am aware of no serious in conven *360 ience which will arise from sustaining Storm v. Livingston. It does not deny a right of action; but merely changes the form, and requires the owner to make a demand before he sues. The whole is little more than matter of practice, like requiring notice to quit in ejectment. But I apprehend the inconvenience must be very great, if we extend the exception to every one who can plausibly show' that he took under a misapprehension, or even under circumstances W'hich must have misled him. There is no privity between him and the original owner 5 and if he happen to find in whose possession his property lies, a demand will many times serve but to raise an alarm, and perhaps hurry both the wrong-doer and property beyond the plaintiff’s reach. An issue upon good faith will, at best, be in some degree inconvenient. It is but another name for an issue on intention, which should, as far as possible, be confined to prosecutions for larceny or other criminal acts. A recovery in trespass, or replevin in the cepit, is no more serious in its consequences than a recovery in the milder form of trover, or replevin in the detinet, unless the case call for an aw'ard of exemplary damages.
In the case at bar, I am for granting a new trial, with instructions that if it shall appear the defendant took of Townsend as a Iona fide purchaser for valuable consideration, the verdict should be for the defendant.
New trial granted.

 See Cummings v. Force, (ante, p. 282.)

 See Pref. to Roll. Air., last page, 1st ed. 1668.