WILLIAM F. WELD & others *vs.* JOHN E. CAME & others.

In an action to recover money paid as the price of a table, there being evidence that the defendant contracted with the plaintiffs to make it and deliver it on their wharf ready for shipment; that he notified them that it was finished and ready, and afterwards proposed to them to dispose of it otherwise, to which they objected, claiming it for shipment; that then they paid his bill for the contract price of it, and said that they would give him notice when they had a vessel to take it; that he made no objection; and that it was accidentally burnt while thus in his custody; *Held*, that it should be left to the jury to determine whether at the time of the fire the table had not become the property of the plaintiffs and been left by them on storage with the defendant, although there is also evidence that the duty of transporting it to the wharf was to be performed by him.

CONTRACT for money had and received to the plaintiffs' use, being the price of a billiard table. In the superior court *Brigham*, J., directed a verdict for the plaintiffs on facts which he reported as follows:

"The plaintiffs offered testimony that in the summer of 1864 they made a contract in writing with the defendants that the defendants should manufacture for them five billiard tables, to be completed within four months, to be delivered on the wharf

packed in cases and ready for shipment, at their vessel, when they had a vessel for the East Indies. In August 1864, the plaintiffs notified the defendants that, having a vessel about to sail, they would receive all the tables, if ready. Four of them were delivered and paid for. The fifth was not then ready. The plaintiffs were not sure that this was within the time limited, but believed it was within the limit. Subsequently the plaintiffs paid for the fifth table four hundred and twenty-seven dollars and fifty cents. They had never received the table or seen it, but admitted that they were informed by the defendants during the autumn of 1864 that it was finished, boxed up and ready for shipment.

" The defendants offered testimony that it was finished and boxed up in August 1864, within two or three weeks of the time of the delivery of the others, and that the plaintiffs were then notified that it was ready, and a bill for it was sent to them about that time; that at several times before January 31, 1865, the plaintiffs were informed that the table was boxed up and ready for shipment, and at one time, when it was proposed to place it in the house of a former member of the plaintiffs' firm, objection was made by the plaintiffs, who claimed that table to ship. On January 31, 1865, the defendants presented a bill for the table, in the usual form of a bill of parcels, which was paid by the plaintiffs and receipted by the defendants on that day. The plaintiffs were then informed that the table was ready, and replied that they would give notice when they had a vessel ready; to which no objection was made by the defendants.

" The table, after its completion in August, was placed in the defendants' store-room, properly boxed, and numbered, where they had no other tables, and was destroyed by an accidental fire on April 30, 1865; and thereupon the defendants contended that the loss of the table was the plaintiffs' loss, and denied the plaintiffs' claim that they were still under an obligation to deliver to the plaintiffs a table. The defendants admitted that the duty of transporting the table to the wharf was to be performed by them."

The defendants alleged exceptions.

*C. F. Choate*, for the defendants.

*J. T. Morse, Jr.*, for the plaintiffs.

CHAPMAN, J. There was evidence in this case which tended to show a sale and delivery of the billiard table in question to the plaintiffs. In August 1864 it was finished and boxed up ready for being shipped; the defendants having previously agreed to make it and deliver it to the plaintiffs on the wharf. The plaintiffs were informed that it was finished, boxed up and ready for shipment. The defendants proposed to the plaintiffs to dispose of it by letting another person have it; but the plaintiffs objected to this and claimed that particular table to ship. In January 1865 the defendants presented their bill for the price, and the plaintiffs paid it. They told the defendants they would give notice when they had a vessel ready to take it, and, as the defendants made no objection to this, the jury would be authorized to find that they agreed to store it in the mean time. An agreement of the vendor to hold the goods sold in storage for the vendee, is equivalent to a delivery. *Chapman* v. *Searle*, 3 Pick. 38. *Farina* v. *Home*, 16 M. & W. 119. Such an agreement changes the relations of the parties to each other and to the property. The defendants were to transport the property to the wharf, and this is a circumstance to be considered by a jury as tending to show that the property was not delivered. But it is not conclusive, and the other circumstances so far explain it, that a jury would be authorized to find that the sale was completed by the arrangement that the defendants should store it till a ship should be ready to receive it. There was nothing to be done, such as weighing, measuring, identifying, or making payment, and there seems to be no reason for holding that the defendants' creditors could have attached it, or that the plaintiffs could not have demanded it at the shop.

We think therefore that the question whether the property had passed to the plaintiffs should have been left to the jury.

*Exceptions sustained.*