WARREN B. MOREY, RESPONDENT, *v*. LEWIS W. MEDBURY AND ESTELLUS SMITH, APPELLANTS.

*Contract of sale — when title passes.*

Plaintiff and defendants having entered into an agreement for the sale of certain hops by the former to the latter, the same were, in pursuance of the direction of the defendants, delivered to the stationmaster at a designated railroad station, the defendants agreeing to pay for them there. At the time of the delivery the plaintiff instructed the agent to deliver them upon the receipt of the purchase-price thereof. After the hops had been at the station for a few days they were stolen. *Held*, that the title to the hops had passed to the defendants, and that they were liable to the plaintiff for the price thereof. (BOCKES, J., dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The action was brought to recover the price of certain hops, alleged to have been sold to the defendants by the plaintiff.

From the report of the referee it appeared that on or about the 20th day of September, 1873, at Georgetown, Madison county, N. Y., the plaintiff and defendants entered into an agreement by which the plaintiff sold to the defendants a quantity of hops and said defendants

agreed to take and pay for said hops at the rate of forty-five cents per pound; the hops to be thereafter delivered to the defendants by the plaintiff at such time and place and in such manner, that is, whether loose, in sacks, or pressed, as the said defendants might thereafter designate; that the sum of two dollars was paid and advanced to the plaintiff by the defendants upon said contract, and that at the time of such purchase and since then to the present time, the defendants were and have been copartners together in the purchase and sale of hops and other merchandise.

That afterwards, and before any directions had been received by the plaintiff from the defendants as to the said hops being delivered pressed or unpressed, the said hops so purchased by said defendants were pressed by the plaintiff into one bale; that the defendants on being advised of said fact made no objection thereto, and on being requested to designate the time when they would take said hops, requested said plaintiff to take said hops to the depot in George-town, on the Syracuse and Chenango Valley Railroad, and leave said hops in said depot, and also requested said plaintiff to leave with the station agent in charge of said depot, a statement showing the weight of said hops, and the price per pound agreed to be paid for said hops, so that said defendants could receive and pay for said hops at said depot, and not be obliged to go several miles from said depot to the residence of the plaintiff to pay for them. That, in pursuance of such instructions, suggestion or direction of the defendants, the said plaintiff soon thereafter, October 14, 1873, delivered said hops, so purchased as aforesaid, at the depot designated by said defendants, and in the manner directed by said defendants, and at the time of such delivery the plaintiff left with the station agent in charge of said depot a notice or order, of which the following is a copy:

"GEORGETOWN, *Oct.* 14, 1873.

"Mr. BEACH — Sir: You will please let Sterling Smith have my bale of hops upon the receipt of the money at forty-five cents per pound. The weight of bale is 252 pounds, which, at forty-five cents, amounts to $113.40. There was two dollars paid down, which my boys say Mr. Smith told them I might keep for extra trouble.

"W. B. MOREY."

That the Mr. Beach referred to in said notice was the station agent in charge of, and had the care and management of said depot where said hops were directed to be delivered by the defendants, and were delivered by plaintiff, and that by "Sterling Smith" mentioned in said order or notice was intended and meant Estellus Smith, one of the defendants in this action.

That said notice or order so left with said Beach remained in the possession of said Beach during all the time said hops remained at said depot, and that said instructions or order to him had not since then been modified or changed by the plaintiff.

That afterwards, and on or about the 17th of November, 1873, the hops so delivered were in the night-time feloniously taken from said depot by some person or persons then and now unknown; that said hops have not since then been found.

That, in the month of January, 1874, the defendants personally notified said station agent who at the time was in charge of said depot and had been since October 14, 1873, that they were ready to receive said hops and demanded said hops of him.

*A. N. Sheldon*, for the appellants. Upon the facts found by the referee, the title to the hops at the time of the theft was in plaintiff and not in the defendants. (*Kein* v. *Tupper*, 52 N. Y., 550; *Murphy* v. *Hawthorn*, 4 Seld., 291; *Field* v. *Moore*, Hill & Denio, 418.) It was a cash sale; a case of payment on delivery, and the law implied a condition that the title should not pass until actual payment, and here the larceny was before payment. (1 Wait L. & P., 487; 8 Barb., 328.) The title would not pass on a delivery at the agreed place of delivery until actual payment. (42 Barb., 177; 13 Johns., 434; *Conway* v. *Bush*, 4 Barb., 564; see, also, 25 id., 474.) At the time of the larceny this bale of hops could have been attached as the property of the plaintiff. (10 Barb., 193.) Such contract remains executory until the price is paid on inspection and acceptance. (*Whitcomb* v. *Hungerford*, 42 Barb., 177.) The defendants had the right to weigh the hops at the depot, before payment, and, until weighed, the title did not pass. (Per JEWETT, J., in 4 Seld. R., 294; 2 Hill, 137.)

*L. B. Kern*, for the respondent. When the terms of sale are agreed on, and the bargain is struck, and every thing that the seller

has to do with the goods is complete, the contract of sale becomes absolute as between the parties, without actual payment or delivery, and the property and the risk of accident to the goods vest in the buyer. (*Hayden* v. *Demets*, 53 N. Y., 431 ; Kent's Com. [Comstock's ed., side paging], 492 ; 44 N. Y., 72 ; 5 Denio, 379 ; 22 N. Y., 368 ; 4 Hun, 565 ; 3 Keyes, 597.) The time of payment, in the absence of any agreement, was on the delivery of the hops. (16 N. Y., 451, 454.) The delivery vested the title to the hops in defendants ; nothing remained to be done by plaintiff. (5 Denio, 382 ; 53 N. Y., 431 ; 15 Wend., 493, 497.)

LEARNED, P. J. :

By the contract of sale in this case, the title passed to the purchaser, subject, however, to the vendor's right of possession until payment. (2 Kent Com., 492 ; *Higgins* v. *Murray*, 11 S. C. N. Y. [4 Hun], 565, *Olyphant* v. *Baker*, 5 Den., 379 *Hayden* v. *Demets*, 53 N. Y., 431, *Terry* v. *Wheeler*, 25 N. Y., 520, at 525 ; *Burrows* v. *Whitaker*, 15 S. C. N. Y. [8 Hun], 260.)

The decisions of *Conway* v. *Bush* (4 Barb., 564) ; *Fleeman* v. *McKean* (25 id., 474) ; *Smith* v. *Lynes* (5 N. Y., 41) will be found to decide the right of the vendor to *possession*, as against the vendee, until payment ; not the question of *title*, in case of loss.

Suppose, as suggested in the case of *Terry* v. *Wheeler*, the property had been such as might have increased — a flock of sheep — and an increase had taken place, whose would have been the increase ? The owners of the flock, of course. And who would have been the owners ? The purchasers.

The judgment should be affirmed, with costs.

BOARDMAN, J. :

I think this case was properly decided by the referee. The evidence authorized him to find that the property was delivered at the depot at the risk of the defendants, and to be paid for before being taken away. The contract was therefore fully performed by the plaintiff, and he was entitled to sue for and recover his pay. The defendants could not have resisted such claim. They were bound to pay, and the retention of the possession of the station agent for plaintiff, and

by his direction, until the price was paid, was in accordance with the contract. It was the possession, and not the title, which remained in plaintiff. Such possession was a security for the price. What more could the plaintiff have done in performance of his contract? What additional tender could he have made of the hops? In what respect was the plaintiff in fault, or for what failure on his part should he be denied the pay for his hops? The contract was valid and binding upon the defendants. Why may they refuse to pay in accordance with the terms of their contract, after the plaintiff has fully performed?

I concur with brother LEARNED in affirming the judgment, with costs.


BOCKES, J. (dissenting):

There was no delivery of the hops at the time of the contract of sale. The contrary of this is not pretended, as it could not be maintained on the evidence submitted. The question then is, whether the delivery afterwards, at the railroad station, was such a delivery as vested the title to the property in the defendants. Very manifestly it was not. The plaintiff left the hops with the station agent as his own property, under written directions to deliver them on payment of the purchase-price. The direction to the station agent was to deliver "*my bale of hops upon the receipt of the money at forty-five cents per pound.*" A delivery of the property to the defendants by the station agent without payment would have been a wrongful delivery of the plaintiff's property; until payment the title remained in the latter. It is perfectly manifest that the plaintiff did not intend to part with his title until payment was made of the purchase-price. He expressly required payment as a condition of delivery. Until compliance with this condition the title remained in the vendor. These conclusions are fully sustained by the decision in *Conway* v. *Bush* (4 Barb., 564). See also *Fleeman* v. *McKean* (25 Barb., 474), and *Smith* v. *Lynes* (5 N. Y., 41). There are many other cases to the same effect. (See *Knight* v. *Mann*, 118 Mass., 146; 120 id., 220, and cases cited; and *Safford* v. *McDonough*, id., 290.)

The title to the hops, therefore, remained in the plaintiff at the time they were stolen from the railroad station, and it follows that

the loss occasioned by the larceny must fall on the party then having the legal title. (*Kein* v. *Tupper*, 52 N. Y., 550.) We are cited to several cases holding that, under a contract of sale of goods, where nothing remains to be done by the seller before making delivery, the right of property passes, although the price be not paid nor the thing delivered. (*Olyphant* v. *Baker*, 5 Denio, 379; *Hyde* v. *Lathrop*, 3 Keyes, 597; *Hayden* v. *Demets*, 53 N. Y., 426, 431.) But these decisions have no application to a case like this in hand, where payment was to accompany delivery. The judgment should be reversed and new trial granted, costs to abide the event, and reference discharged.

Judgment affirmed, with costs.