## Case No. 9,590.

### MILLER v. SMITH.

[1 Mason, 437.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1818.

SALE — AGREEMENT TO RESCIND — REDELIVERY — MITIGATION OF DAMAGES — REPRESENTATIONS — QUALITY.

1. Where a sale is made of goods and they are delivered, and an agreement is afterwards made to rescind the contract, the contract is not completely rescinded until a re-delivery of the goods.

[Cited in Folsom v. Cornell, 150 Mass. 118, 22 N. E. 705; Blanchard v. Trim, 38 N. Y. 229; Getty v. Rountree, 2 Pin. 391.

2. In an action for goods sold, the defendant may give in evidence, in mitigation of the damages, that the goods were of a quality inferior to what they were represented to be at the sale.

[Cited in Elminger v. Drew, Case No. 4,416; Withers v. Greene, 9 How. (50 U. S.) 227.]
[Cited in Harrington v. Stratton, 22 Pick. 512. Cited in brief in Hyatt v. Boyle, 5 Gill & J. 118.]

Assumpsit for goods sold and delivered. Plea, the general issue. At the trial it was proved, that the defendant [Caleb Smith] in March last purchased of Messrs. Athearn and Williams, commission merchants of Boston, who were the consignees and agents of the plaintiff, 100 kegs of Miller's No. 3 tobacco, at eleven and a half cents per pound, at six months' credit, amounting in the whole to $795.80; under an express representation, that the tobacco was as good as Messrs. Athearn and Williams had before sold to the defendant of Miller's No. 3 tobacco, and as good as the defendant had previously bought of a Mr. Reed. The tobacco was delivered accordingly; and sometime afterwards the defendant complained, that the quality of the tobacco was greatly inferior to what it was represented to be. Messrs. Athearn and Williams, upon this complaint, being satisfied, that the tobacco was not as good as they supposed it to be, and as they had represented it to be, offered to take it back again, which offer was accepted by the defendant. But before the actual return, Messrs. Athearn and Williams, having communicated the facts to the plaintiff [Hugh R. Miller], the latter utterly re-

[1] [Reported by William P. Mason, Esq.]

fused to rescind the bargain or receive the tobacco back again, upon the ground that No. 3 tobacco was always known to be of the most inferior quality, and never sold under a warranty. The defendant sent the tobacco to Boston, but Messrs. Athearn and Williams, under the orders of their principal, refused to receive it; and it was then sold at public auction by the defendant for the benefit of whomsoever it might concern, and the nett sales amounted to $405.69. The defendant at the trial insisted upon two points. 1st. That the original contract of sale was rescinded, and therefore the plaintiff was not entitled to recover in an action for goods sold and delivered. 2dly. That if the sale was a subsisting contract, still the plaintiff was not entitled to recover more than the price, at which the tobacco sold at auction. The plaintiff on the other hand insisted, 1st. That the contract of sale never was rescinded. 2dly. That in this action the plaintiff was entitled to recover the contract price of the tobacco without any deduction; and, that if the defendant was entitled to any allowance for the supposed misrepresentation, it must be sought in a cross action, founded upon the original representation.

G. Sullivan, for plaintiff.
Webster & Curtis, for defendant.

STORY, Circuit Justice. There is no pretence in this case, that the representation was fraudulent. It was made, as all parties agree, innocently, under a misapprehension of the state of the tobacco, which had not been examined by the consignees. I think, that the consignees had authority to make the representation, and that the plaintiff is bound by it. When the plaintiff sent the tobacco to the consignees for sale, there was an implied authority to represent the article to be, what it was marked and described to be. The representation of the consignees went no farther than this, that the tobacco was as good as Miller's No. 3 had previously been. Now, in point of fact, the tobacco was very inferior in quality to what Miller's No. 3 usually was. And certainly if that be so, the defendant has sustained an injury by the misrepresentation, and he is entitled to a recompense, however innocently it may have been made.

As to the points of law raised in the case, I am clearly of opinion, that the contract was not rescinded. There was an agreement to rescind, which was never carried into effect, but was stopped by the plaintiff's interference; and as the tobacco was never received back, the original contract remained valid. To constitute an actual rescission of the contract, there should have been a re-delivery of the goods. Until that is done, the agreement to rescind is in fieri.

The other point presents no pressing difficulty. Where goods are sold as of a certain quality, and they turn out to be of an inferior quality, the defendant may, in an action for goods sold and delivered, give the facts in evidence to reduce the damages; for the plaintiff is entitled to recover no more than the real value of his goods. The authorities directly support this doctrine; and there is neither reason nor justice in straining after technical objections to overthrow it. Vide Crowninshield v. Robinson [Case No. 3,451]. The auction sale is not, however, conclusive upon the plaintiff, as to the value of the tobacco. The true rule for the jury is, to deduct from the original price the real difference in value between this and the common Miller's No. 3 tobacco; and in making their estimate, they will weigh all the evidence, and give the plaintiff, what is his just due, making all deductions.

Verdict for the plaintiff, $596.85.