NATHAN MORSE & others *vs.* WILLIAM F. SHERMAN.

The price of goods bargained and sold may be recovered in an action on a common count. A. proposed to buy of B. for cash all the goods in B.'s store, of a certain kind, at a certain price. B. accepted the proposal, set the goods apart and made a schedule of them, and permitted A. to take a portion of them upon his payment "on account" of a sum less than the proportionate price thereof, he saying that he had not then money to pay for the whole, and promising to pay the balance and take away the rest of the goods in a few days. B. thereafter held the goods ready for A. to take away upon paying the balance of the price, and refused to surrender them to him otherwise; and, after demanding of him and being refused payment thereof, sued him on a count upon an account annexed, in which he was charged with the contract price of the goods and credited with the sum which he had paid. *Held,* that the jury would be warranted in finding that it was the intention of the parties to make the sale absolute, subject only to the seller's lien for the price; and that on such a finding the plaintiff was entitled to recover.

CONTRACT. The declaration contained two counts, the first on an account annexed, the second for goods sold and referring to the account as a bill of particulars.

At the trial in the superior court, before *Reed,* J., John S. Manny, one of the plaintiffs, testified to these facts : The plaintiffs, as assignees of the Inventors' Manufacturers' Company, a bankrupt corporation, in July 1869 took possession of a stock of goods in a store in Boston, where the corporation had been doing business. The stock was a large one, and included "a lot of cutlery, plated ware, ladies' travelling-bags, pocket-books, pencils and fancy goods." The defendant made a proposal "to buy for cash all the goods in the store of the description named, at a certain discount from the manufacturers' list of prices," and the plaintiffs accepted the offer. All the goods of that description were then taken from the shelves and drawers where they had been kept, and put by themselves, ready for delivery; and a schedule was made, showing, after deducting the agreed rate of discount, the amount of $4103.78, as their price according to the terms of the sale. After they had been thus set apart and scheduled, the defendant stated that he had not the money to pay for the whole of them, but would like a part of them for his customers; and was allowed to take the plated ware and some of the cutlery, "amounting to about $1200 worth," paying $1000 "on account." At the time of this payment, the defendant said that

he would pay the balance and take away the rest of the goods in a few days. The rest of the goods accordingly remained at the store, ready for the defendant, for several days, and until near the time when the plaintiffs were to vacate the store. After disposing of the remainder of the stock, the plaintiffs requested the defendant to pay the balance of the purchase money and take the goods away; and he thereupon proposed that they should take his note on time for the balance. This they declined to do, and gave him notice that, if he did not pay the balance and take the goods away before they vacated the store, they should box them up and store them at his risk and expense; and they refused to allow him to take them away until he should pay for them. On the day when they vacated the store, they boxed up the goods and removed them to the warehouse of one of the plaintiffs. The defendant was present during the packing of the goods for removal, and made no objection, and said that he should have the money in a few days and would then take them. After they were removed, the defendant asked the plaintiff at whose warehouse they were stored to take an assignment of certain leases as security for the balance of the purchase money; but the plaintiffs declined to accept such collateral security. The plaintiffs always were and now are ready to give up the goods, upon the payment of the balance of the purchase money, but always declined to allow the defendant to take them otherwise; and after making repeated demands on the defendant to comply with the terms of sale, they brought this action.

All the goods thus bargained and sold to the defendant were charged to him at the contract prices in the account annexed to the declaration, and he was credited therein with the $1000 paid by him.

The judge, being of opinion that the plaintiffs could not recover, under the declaration, for the goods not taken away by the defendant, reported that question, by the consent of the parties, before verdict, for the determination of this court, reserving to the plaintiffs the right to apply to amend the declaration if it should be adjudged insufficient.

*A. A. Ranney*, (*N. Morse* with him,) for the plaintiffs.

*J. B. Richardson*, for the defendant.

COLT, J. A count on an account annexed may be used under our statute, "where the action is for one or more items, which would be correctly described by any one of the common counts." This includes an action for the price of goods bargained and sold, as well as one for goods sold and delivered, because formerly the price in such case could be recovered under an *indebitatus assumpsit*. *Stearns* v. *Washburn*, 7 Gray, 187. Do the facts here reported justify the jury in finding for the plaintiffs under a general count for goods bargained and sold, or such a count for goods sold and delivered ? If so, then the declaration on the account annexed is sufficient, and the case should have been submitted to them.

The evidence reported tends to show a completed contract of sale. Nothing remained to be done by either party, in the way of designating, or appropriating, or accepting, the goods sold. They were all that were in the store of the description named, and were taken from the shelves, scheduled, and put by themselves. After they were thus set apart, the defendant took a portion of them, paying a part of the price, and saying that he had not money to pay for the whole, but promising to pay the balance in a few days. The goods have since been kept by the plaintiffs ready to be surrendered to the defendant upon payment of the balance of the purchase money. The purchase was for cash ; and the plaintiffs had a right to retain possession, by virtue of their lien for the price. The contract of sale was executed.

It is a familiar rule of pleading, that, when the terms of a special contract have been so far performed that nothing remains but a mere duty to pay money, then the amount due may be recovered under a general count. It is only necessary to declare specially, when the agreement remains executory. Thus when the contract of sale is complete, and the vendee does not take away the goods, the vendor may recover the price in *indebitatus assumpsit*. The law does not require that complete delivery, that actual receipt of the goods, which would be necessary to defeat the vendor's lien for the price, or his right of stoppage *in tran-*

*situ,* or which would be required to take the case out of the stat-
ute of frauds. The term "delivery" is used in the law of sales
in very different senses. It is used in turn to denote transfer of
title and transfer of possession ; and where the parties have agreed,
and the specific articles are appropriated and accepted, then, inde-
pendently of the statute of frauds, it is often said, there is suffi-
cient delivery to pass the title, although there be no transfer of
possession. And this must be so, in order to be consistent with
the lien which remains to the vendor for the price. 2 Kent Com.
(6th ed.) 492. *Simmons* v. *Swift,* 5 B. & C. 857. In *Dixon* v.
*Yates,* 5 B. & Ad. 313, Parke, J., said that when, by the contract
itself, the vendor appropriates to the vendee a specific chattel, and
the latter thereby agrees to take the specific chattel and pay the
stipulated price, the parties are then in the same situation as they
would be in after a delivery of goods in pursuance of a general
contract. The appropriation of the chattel is equivalent to de-
livery by the vendor ; and the assent of the vendee, to take the
specific articles and pay the price, is equivalent to his accepting
possession. And it is now well settled that "by the law of Eng-
land, by a contract for the sale of specific ascertained goods, the
property immediately vests in the buyer, and a right to the
price in the seller, unless it can be shown that such was not the
intention of the parties." *Gilmour* v. *Supple,* 11 Moore P. C.
551, 566. Blackburn, J., in *Calcutta & Burmah Steam Naviga-
tion Co.* v. *De Mattos,* 32 L. J. (N. S.) Q. B. 322, 328. See
also *Damon* v. *Osborn,* 1 Pick. 476 ; *Middlesex Co.* v. *Osgood,*
4 Gray, 447 ; *Riddle* v. *Varnum,* 20 Pick. 280.

In *Atwood* v. *Lucas,* 53 Maine, 508, cited for the defendant,
the action indeed was upon an account annexed, which would, as
we have seen, have been maintained by proof of goods bargained
and sold merely, as well as by proof of goods sold and delivered.
But the facts of the case are not fully stated in the report ; the
question passed upon, as appears both in the opinion of the court
and the head note of the reporter, was whether general *indebi-
tatus assumpsit* could be supported, without proof of actual deliv-
ery and acceptance of the goods ; and it was erroneously assumed
that goods bargained and sold required a special count, and could

not be recovered for under the common counts. That case there-fore is of no weight upon the question what evidence is necessary to maintain an action for goods bargained and sold.

In *Turley* v. *Bates*, 2 H. & C. 200, the declaration contained a special count, with counts for goods bargained and sold, goods sold and delivered, and on an account stated; the plaintiff sold the defendant a quantity of clay at a certain price per ton, to be carted away by the defendant and weighed at his own expense; it appeared that it was the intention of the parties that the property should pass to the buyer; and it was held that the plaintiff might recover the balance of the price under a count for goods bargained and sold, although the clay had never been all carted away and weighed.

It is competent, of course, for the parties expressly to agree, in the contract of sale, that the title to the property shall not pass except on the performance of a precedent or concurrent condition, such as the payment of the price. It is then a conditional sale strictly; and it is familiar law that the title will remain in the seller. It will not be a complete sale; it is then an executory contract; and it may be that the vendor's remedy is only upon a special count. The case shows no such express condition here; and there was evidence enough, in the opinion of a majority of the court, to warrant the jury in finding that it was the intention of the parties to make the sale complete and absolute, subject only to the vendor's lien for the price. Upon such a state of facts, as we have seen, the declaration is sufficient.

*Case to stand for trial.*